UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA & STATE OF NEW HAMPSHIRE DEPARTMENT OF ENVIRONMENTAL SERVICES,<br><br>　　　Plaintiffs,<br><br>　v.<br><br>MCCORD CORP.,<br><br>　　　Defendant. | Civ. No. 1:22-cv-289-SM |

**AMENDED JOINT PROPOSED DISCOVERY PLAN**
**Fed. R. Civ. P. 26(f)**

In accordance with the Court's Case Management Order, dated November 29, 2022, Federal Rule of Civil Procedure 26(f), and Local Rule of Civil Procedure 26.1, Plaintiff United States of America (United States), Plaintiff State of New Hampshire Department of Environmental Services (New Hampshire) and Defendant McCord Corporation (Defendant or McCord), respectfully submit this Amended Joint Proposed Discovery Plan.

**I.     INITIAL MATTERS**

**A.  DATE/PLACE OF CONFERENCE**

The Parties held Rule 26(f) conferences by telephone on February 13 and 24, 2023.

**B.  COUNSEL PRESENT/REPRESENTING**

Attorneys for United States of America:

Natalie G. Harrison
Alison Kelly
Trial Attorneys
Environment and Natural Resources Division
U.S. Department of Justice

1

Attorney for New Hampshire:

Joshua C. Harrison
Assistant Attorney General
Environmental Protection Bureau
N.H. Department of Justice

Attorneys for McCord:

Robert Lucic
Sheehan Phinney & Bass, P.A.

Michael Vitris
Beveridge & Diamond, P.C.

## II.     CASE SUMMARY

This case involves federal and state liability for the response costs associated with the former Collins and Aikman Automotive Interiors, Inc. real property located in Farmington, NH (the Site). The Plaintiffs allege that perchloroethylene (PCE), trichloroethylene (TCE), dichloroethylene, toluene, and methylene chloride, which are hazardous substances under CERCLA and N.H. RSA 147-A and 147-B, were disposed of at the Site at least between 1966 and 1977. 42 U.S.C. § 9601(14); 40 C.F.R. § 302.4. The United States alleges that it has incurred at least $8,992,923.70 in costs, and will continue to incur costs, responding to the release of hazardous substances at the Site. New Hampshire alleges that it has incurred at least $166,000 in costs, and will continue to incur costs, responding to the release of hazardous substances at the Site. McCord contends that it is not liable under CERCLA or analogous New Hampshire law.

## III.    THEORY OF LIABILITY

Plaintiffs assert that Defendant McCord is liable under Section 107 of CERCLA, which imposes liability for response costs on owners and operators of facilities at the time that hazardous wastes were disposed of at the facility. 42 U.S.C. § 9607(a). The Plaintiffs allege that the Defendant is liable as the successor-in-interest to another corporation, also named McCord

Corporation, which was incorporated in Maine (McCord Maine), and was the parent corporation to Davidson Rubber Company, Inc. (Davidson Rubber). In the early 1970s, contaminated wastewater from manufacturing processes at a facility located at the present-day Site became a concern to Davidson Rubber and McCord Maine employees. The Plaintiffs allege that between 1971 and 1977, McCord Maine operated the facility, alongside its subsidiary, Davidson Rubber, which it also held out as a division of McCord Maine. McCord Maine employees made decisions regarding waste management and compliance with environmental regulations at the Site, giving rise to operator liability under *United States v. Bestfoods*, 524 U.S. 51, 66–67 (1998).

The United States seeks: (1) unreimbursed response costs of at least $8,992,923.70; and (2) a declaratory judgment that the Defendant is liable for further response costs. 42 U.S.C. § 9613(g)(2). New Hampshire seeks (1) unreimbursed response costs of at least $166,000; and (2) a declaratory judgment that Defendant is liable for further response costs. 42 U.S.C. § 9613(g)(2); N.H. RSA 147-A; N.H. RSA 147-B.

## IV.    THEORY OF DEFENSE

Defendant McCord asserts that it is not liable under Section 107 of CERCLA as a successor-in-interest to McCord Corporation under a theory of "direct operator liability." *United States v. Bestfoods*, 524 U.S. 51, 66–67 (1998). Parent corporations are rarely liable for the actions of their subsidiaries. The controlling standard under CERCLA case law imposes liability on a parent corporation only if it "actively participated in, and exercised control over, the operations of the facility itself." *Bestfoods*, 524 at 66-68. Direct "operator" liability is only appropriate where the activities of the corporate affiliates "went far beyond the norms of parental oversight." *United States v. Kayser-Roth Corp.*, 272 F.3d 89, 104 (1st Cir. 2001). The evidence

will show that McCord's involvement with the Davidson Rubber facility was not beyond the norms of parental oversight that existed at the time.

In the event this case moves to a second phase regarding costs, Defendant McCord will require that the Plaintiffs produce evidence that the various costs allegedly incurred by the United States and New Hampshire are not inconsistent with the National Contingency Plan and are otherwise recoverable under Section 107.

## V.     DAMAGES

The Plaintiffs do not seek "damages," but they do seek recovery of unreimbursed response costs incurred or to be incurred in connection with the Site, plus interest. The United States' unreimbursed response costs are at least $8,992,923.70, as of March 30, 2022. New Hampshire's unreimbursed response costs are at least $166,000 to date.[1] If the Court rules that McCord is liable under CERCLA § 107, 42 U.S.C. § 9607, the Plaintiffs would also be entitled to a declaratory judgment for future costs, not inconsistent with the National Contingency Plan, under CERCLA § 113(g), 42 U.S.C. § 9613(g) and N.H. RSA 147-A and N.H. RSA 147-B.

The Parties agree that bifurcation of this matter into liability and costs/allocation phases will focus the Parties' disputes and promote efficiency.  The Parties request a separate phase to determine Defendant's liability, before any discovery into Plaintiffs' costs or Defendant's potential allocation begins. Regarding liability, the Plaintiffs and Defendant primarily disagree about whether McCord Maine was an operator of the facility under *United States v. Bestfoods*, 524 U.S. 51, 66–67 (1998). The Parties agree that narrowing the litigation to determine this legal issue first would save time and resources of the Court and the Parties.

---

[1]     Plaintiffs use the costs listed in the joint complaint for purposes of this discovery plan but note that, for New Hampshire, the incurred costs have been updated and the incurred cost has increased beyond $166,000. EPA has not updated its cost packages since March 2022.

**VI.     DEMAND:**  To be determined after the completion of Phase I of the litigation.

**VII.    OFFER:**   To be determined after the completion of Phase I of the litigation.

**VIII.   JURISDICTIONAL QUESTIONS**

This Court has jurisdiction over the subject matter of this action and over the Parties to this action under 42 U.S.C. §§ 9607 and 9613(b), as well as 28 U.S.C. §§ 1331 and 1345.

**IX.     QUESTIONS OF LAW**

Whether Defendant is liable under CERCLA Section 107(a)(2), 42 U.S.C. § 9607(a)(2) and/or N.H. RSA 147-A and 147-B.

**X.      TYPE OF TRIAL:**      Bench

**XI.     SCHEDULE**

The Plaintiffs contend that expert discovery for the liability phase of this action is unnecessary. The Plaintiffs have alleged that Defendant is liable largely due to the actions of McCord Maine's employee, "with no hat to wear but the parent's hat" who managed and directed environmental activities at the Farmington Plant. *Bestfoods*, 524 U.S. at 71.

Notwithstanding this objection, the Plaintiffs agree to the following discovery schedule proposed by Defendant, based on the understanding that at this time, the Parties currently anticipate fewer than four experts for this phase of litigation:

- Pretrial Conference (unless cancelled by the Court): March 9, 2023

- Fact Discovery Ends: August 1, 2023

- Deadline to Disclose Experts and Serve Expert Reports: September 15, 2023

- Deadline to Disclose Rebuttal Experts and Serve Rebuttal Reports: November 15, 2023

- Deadline to Complete Expert Depositions: December 15, 2023

- Cross-motions for Partial Summary Judgment and Other Dispositive Motions Due: February 9, 2024

- Responses to Cross-motions and Dispositive Motions Due: March 22, 2024

- Replies to Cross-motions and Dispositive Motions Due: April 19, 2024.

At the close of Fact Discovery, should one or more Parties believe that additional experts may be necessary, the Parties shall meet and confer to discuss an extension of this proposed schedule.

To the extent there are liability issues left unresolved by the Court's ruling on the cross-motions for partial summary judgment, the Parties propose developing a separate schedule for resolving those issues and a separate schedule for Phase 2 of the litigation regarding costs and allocation if necessary.

**A. TRACK ASSIGNMENT:**   COMPLEX – 24 MONTHS

**B. TRIAL DATE:** 24 months from Court's ruling on the cross-motions for partial summary judgment

**C. DISCLOSURE OF CLAIMS AGAINST UNNAMED PARTIES:** The Parties do not anticipate claims against unnamed parties.

**D. AMENDMENT OF PLEADINGS:**  60 days from the date of ruling on the cross-motions for partial summary judgment, if denied.

**E. JOINDER OF ADDITIONAL PARTIES:**  The Parties do not anticipate joining additional parties at this time.

**F. THIRD PARTY ACTIONS:** The Parties do not anticipate third-party actions.

**G. MOTIONS TO DISMISS:**  The Parties do not anticipate motions to dismiss.

**H. DATES OF DISCLOSURE OF EXPERTS AND EXPERTS' WRITTEN REPORTS AND SUPPLEMENTATIONS:**

As explained above, the Plaintiffs do not believe that expert discovery is necessary for this phase of litigation. However, the Plaintiffs have agreed to the following expert discovery schedule:

- Deadline to Disclose Experts and Serve Expert Reports: September 15, 2023

- Deadline to Disclose Rebuttal Experts and Serve Rebuttal Reports: November 15, 2023

- Deadline to Complete Expert Depositions: December 15, 2023

Expert disclosures shall comply with Fed. R. Civ. P. 26(a)(2). Additionally, any demonstrative exhibits that will be used by the experts need not be produced until the time of the final pretrial statements. Supplementation of all disclosures under Rule 26(e) shall be made as soon as reasonably possible upon discovery of the supplemental information, but no later than 30 days after discovery of the information.

**I.   COMPLETION OF DISCOVERY:** For Phase 1 of the litigation, these dates will be determined in accordance with the procedures outlined in Section XI above.

**J.   MOTIONS FOR SUMMARY JUDGMENT:**  Due February 9, 2024

**K.   CHALLENGES TO EXPERT TESTIMONY:** Due February 9, 2024

## XII.   DISCOVERY

**A.   DISCOVERY NEEDED: Give a brief description of subjects on which discovery will be needed.**

The Plaintiffs have already compiled information, including from prior insurance litigation that arose out of the same hazardous releases and pollution from the Site that is the subject of the claims in this matter.  *See Fireman's Fund Ins. Co. v. Ex-Cell-O Corp. et al.*, 750 F. Supp. 1340 (E.D. Mich. 1990). In the interest of judicial economy, the United States has provided extensive records from EPA's Site SEMS files, including the historic documents from the *Fireman's Fund litigation* to McCord; the State shares in this production; and the Plaintiffs believe the matter is ripe for judicial resolution by the Court. Following resolution of the first

phase of litigation, additional discovery may be necessary on any items unresolved by the Court's ruling on the cross-motions for partial summary judgment.

The Defendant believes that targeted fact and expert discovery is necessary prior to adjudication of the *Bestfoods* issues in this case. The Defendant has few records and expects to look to third parties, including the Plaintiffs, for much of the relevant documents. Although the litigation in the *Fireman's Fund* case overlapped in some areas with the operative facts of this matter, the legal issues involved in the two are distinctly different and, accordingly, discovery directly related to the specific *Bestfoods* issues in this case must be completed. This includes depositions of some witnesses already deposed during the *Fireman's Fund* case in addition to new witnesses that were not part of that case. Moreover, *Bestfoods* issues regularly involve the testimony of experts on corporate governance and other relevant topics that the Defendant intends to pursue and utilize in this case.

The Parties propose that a second phase of litigation follow, if necessary, regarding Plaintiffs' costs and Defendants' affirmative defenses.

### B.  MANDATORY DISLCOSURES (Fed. R. Civ. P. 26(a)(1)):

The Parties have exchanged initial disclosures on February 3, 2023.

### C.  INTERROGATORIES:

The Parties agree that, for this phase of litigation on liability, each Plaintiff may propound 25 interrogatories to Defendant and that Defendant may propound 25 interrogatories to Plaintiff United States and 25 interrogatories to Plaintiff New Hampshire.

**D.  REQUESTS FOR ADMISSION:**

Although the Parties generally agree about the scope of discovery regarding this phase of litigation, the Parties have not reached agreement on limits on requests for admission or requests for production.

**E.  DEPOSITIONS:**

The Parties agree to 10 depositions per Party for this phase of litigation.

**F.  ELECTRONIC INFORMATION DISCLOSURES (Fed. R. Civ. P. 26(f)):**

Given the nature of the case, the Parties anticipate the production of electronically stored information.  To that end, the Parties negotiated several agreements regarding discovery procedure, attached as exhibits:

1. The Parties agreed to execute a <u>Stipulation Regarding Discovery Procedure</u> regarding the disclosure or discovery of electronically stored information, including the Parties' preservation of electronically stored information and the form(s) in which it will be produced, and inadvertent disclosure of privileged material pursuant to Federal Rule of Evidence 502.  The Stipulation Regarding Discovery Procedure is attached hereto as Exhibit A.

2. The Parties agreed to execute an <u>Agreed Protective Order</u>.  This agreement protects against the disclosure of information protected as Confidential Business Information. This agreement is modeled on Civil Form 5, with edits by the Parties indicated in redline.  The Agreed Protective Order is attached hereto as Exhibit B.

3. The Parties agreed to seek entry of an Order Under Rule 502 of the Federal Rules of Evidence. This Order governs the inadvertent disclosure of privileged material

pursuant to Federal Rule of Evidence 502. The FRE 502 Order is attached hereto as

Exhibit C.

***Search Terms for Electronic Discovery:***

EPA maintains the SEMS database, which includes as the official record repository for

each Site listed on the National Priority List. The United States has collected approximately

3,000 documents from EPA's SEMS file for this Site as of November 2022, including privileged

materials that are exempt from disclosure. The United States has reviewed the Site SEMS file for

privileged materials and has provided McCord with copies of non-privileged documents

pertaining to the claims and defenses in this case in advance of the United States' initial

disclosures, along with a privilege log.

At this time, the Plaintiffs do not believe that it is relevant or proportional to the needs of

this case to review and produce emails and loose ESI from EPA's or New Hampshire's

custodians. First, the Parties agree that the Court should bifurcate this matter into liability and

costs/affirmative defenses phases for judicial economy. Second, liability in this matter arises out

of actions, documents, and events that primarily occurred between the 1960s and 1970s, which

were extensively documented in the *Fireman's Fund* litigation. The United States has obtained

documents from that case, which are available in EPA's SEMS file for the Site and have been

produced to McCord. In McCord's March 2020 response to EPA's information request under 42

U.S.C. § 9604(e), McCord confirmed that it did not have other additional documents from the

*Fireman's Fund* litigation. Additionally, an entity related to McCord sold the Site to a third party

in 2001; following that third party's Chapter 11 bankruptcy in 2005, records related to the Site

and from the *Fireman's Fund* litigation that had been stored at the Site were turned over to the

State of New Hampshire, which in turn shared them with EPA. Because the documents that had

been in the possession of the State of New Hampshire were produced by EPA, the State intends

to rely on the United States' November 18 production of the Site SEMS files for purposes of this

liability phase. The United States has also obtained and produced additional documents from the

*Fireman's Fund* litigation from the Eastern District of Michigan and the National Archives.

Given this history, the Plaintiffs believe that the email communications and documents that have

been generated and received by EPA and the State since the Site was listed on the National

Priorities List in 2013 (approximately when EPA would have begun incurring response costs),

long after the period concerning McCord's potential liability in the 1960s-1970s, are unlikely to

provide new information relevant to the liability phase of this litigation. Moreover, the emails

and loose ESI of EPA employees with information about this matter significantly exceed the

volume of documents already available in the SEMS file for the Site, and substantively duplicate

much of what is already in SEMS.

Although the Defendant disagrees that the documents referenced above by EPA

necessarily constitute the entire and exclusive universe of documents that may be relevant to

adjudication of the *Bestfoods* issues in this case on the cross-motions for summary judgment in

Phase 1, the Defendant agrees that for purposes of discovery in Phase 1, the Plaintiffs do not

need to search and review emails and loose ESI of EPA employees.

If additional discovery involving collection and review of EPA's and the State's loose

ESI and emails via search terms is required after resolution of the cross-motions for partial

summary judgment, the Parties agree to meet and confer to discuss appropriate limitations in

accordance with the Discovery Stipulation (Appendix A) in this matter.

**G. STIPULATION REGARDING CLAIMS OF PRIVILEGE/PROTECTION OF TRIAL PREPARATION MATERIALS (Fed. R. Civ. P. 26(f)):**

The Parties seek a protective order under Federal Rules of Evidence 502(d). Under Rule 502(d) of the Federal Rules of Evidence that disclosure of privileged or protected information or documents in discovery conducted in this litigation will not constitute or be deemed a waiver or forfeiture—in this or any other federal or state proceeding—of any claims of attorney-client privilege or work product protection that the disclosing Party would otherwise be entitled to assert with respect to the information or documents and their subject matter. The Parties have agreed to a procedure for clawing back inadvertently disclosed materials and challenging claims of privilege. See Proposed Rule 502 Order.

*Provide a brief description of the provisions of any proposed order governing claims of privilege or of protection as trial preparation material after production (and/or attach a proposed order).*

**XIII.   OTHER ITEMS**

**A. SETTLEMENT POSSIBILITIES:**

The Parties engaged in pre-filing settlement discussions. The Parties agree that a settlement conference is not appropriate at this time in light of their fundamental disagreement about the effect of *United States v. Bestfoods*, 524 U.S. 51, 66–67 (1998), on these facts. The Parties believe that settlement discussions may be appropriate at the conclusion of any necessary discovery or after motion practice regarding the *Bestfoods* issue.

**B. JOINT STATEMENT RE: MEDIATION:**

The Parties engaged in pre-filing settlement discussions. The Parties agree that mediation is not appropriate at this time in light of their fundamental disagreement about the effect of *United States v. Bestfoods*, 524 U.S. 51, 66–67 (1998), on these facts. The Parties believe that

mediation may be appropriate at the conclusion of any necessary discovery or after motion practice regarding the *Bestfoods* issue.

**C. TRIAL ESTIMATE:** To be updated after the Court's ruling on cross-motions for partial summary judgment.

**D. WITNESSES AND EXHIBITS:** *[NOTE: no dates necessary. Due dates are as follows, and will be set by the clerk's notice of trial assignment.]*

- *Witness and exhibit lists, including in final pretrial statements, are due 10 days before final pretrial conference but not less than 30 days before trial.*
- *Objections are due 14 days after filing of final pretrial statements.*

**E. PRELIMINARY PRETRIAL CONFERENCE:**

The Parties do not request a preliminary pretrial conference with the Court before entry of the scheduling order.

**F. OTHER MATTERS:** *No other matters at this time.*

WHEREFORE, the Parties respectfully request that this Honorable Court take notice of this Amended Joint Proposed Discovery Plan.

Respectfully submitted,

*For the Plaintiff United States:*

/s/ Natalie G. Harrison

NATALIE G. HARRISON
Florida Bar No.: 0111525
ALISON KELLY
Florida Bar No.: 0016660Trial Attorneys
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice

*For the Plaintiff State of New Hampshire:*

/s/  Joshua C. Harrison
Joshua C. Harrison, Bar # 269564

Assistant Attorney General
Environmental Protection Bureau
Office of the Attorney General
New Hampshire Department of Justice
33 Capitol Street
Concord, NH 03301-6397
(603) 271-3679
Joshua.C.Harrison@doj.nh.gov

*For Defendant McCord:*

/s/ Robert R. Lucic
Robert R. Lucic (NH Bar #9062)
Thomas S. Burack (NH Bar #6552)
Bryanna K. Devonshire (NH Bar #269462)
Abbygale S. Martinen (NH Bar #272938)
SHEEHAN PHINNEY BASS & GREEN
PA
1000 Elm Street, P.O. Box 3701
Manchester, NH 03105-3701
(603) 668-0300
rlucic@sheehan.com;
tburack@sheehan.com;
bdevonshire@sheehan.com;
amartinen@sheehan.com

Lauren M. Karam (admitted *pro hac vice*)
BEVERIDGE & DIAMOND PC
155 Federal St. Suite 1600
Boston, MA 02110
(617) 419-2315
lkaram@bdlaw.com

James B. Slaughter (admitted *pro hac vice*)
BEVERIDGE & DIAMOND PC
1900 N St. NW Suite 100
Washington, DC 20036
(202) 789-6040
jslaughter@bdlaw.com

Michael F. Vitris (admitted *pro hac vice*)
BEVERIDGE & DIAMOND PC
400 W. 15th Street, Suite 1410
Austin, TX 78701
(512) 391-8035
mvitris@bdlaw.com

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that this document was filed today through the CM/ECF system,

which automatically provides a digital copy of it to all attorneys of record.

*/s/* Natalie G. Harrison
NATALIE G. HARRISON
Florida Bar No.: 0111525
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044
Tel: (202) 305-0461
Fax: (202) 616-2427
Natalie.G.Harrison@usdoj.gov
